**FILED**

JAN 1 0 2012

RICHARD W. WIEKING
CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

RECEIVED
JAN 10 2012
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1
Tetsuya Joe Nomura
3288 Pierce Street, Suite C129
2
Richmond, CA 94804-5952
Tel: (510) 200-4381
3
VoD.JN@gmx.us
4
Plaintiff, *Pro Se*

5

6                    UNITED STATES DISTRICT COURT

7            FOR THE NORTHERN DISTRICT OF CALIFORNIA

8                      SAN FRANCISCO DIVISION

9

10   Tetsuya Joe Nomura,                Case No.: **3:11-CV-01208-SI**

11                                      **FIRST AMENDED COMPLAINT FOR
                                        PATENT INFRINGEMENT**
12
              Plaintiff,               **DEMAND FOR JURY TRIAL**
13

14
         vs.
15

16
     YouTube LLC.,
17

18            Defendant.

19
                                        **Hearing**
20                                      Date: **Tuesday, February 28, 2012**
                                        Time: **9:00 am**
21                                      Judge: **Hon. Susan Illston**
                                        **Courtroom: 10, 19th Floor**
22

23        /

24        /

25        /

26        /

27        /

28        /

                              -Cover Page-

First Amended Complaint for Patent Infringement

                                        Case No. 3:11-CV-01208 SI

**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff, Tetsuya Joe Nomura ("*Nomura*"), for his complaint herein against Defendant YouTube LLC. ("*YouTube*"), upon personal knowledge as to his own actions and upon information and belief as to the actions of others, hereby alleges as follows:

## NATURE OF THE ACTION

1.  This is an action for patent infringement. This action is brought to vindicate the rights of the exclusive owner of patented intellectual property. This intellectual property was created and made valuable by the investment – a life-long investment – of creativity, time, talent, energy, innovation, and resources of the patent holder, not the Defendant. Yet Defendant, which owns and operates the website YouTube.com, has knowingly and willingly misappropriated and exploited this valuable intellectual property for Defendant's own gain without payment to or license from the rightful exclusive owner of said intellectual property, Plaintiff *Nomura*.

## PARTIES

2.  Plaintiff, Tetsuya Joe Nomura is an inventor and retired engineer whose principle address is 3288 Pierce Street, Suite C129, Richmond, California 94804-5952.

3.  Upon information and belief, and on that basis Plaintiff alleges, that Defendant YouTube LLC. ("*YouTube*") is a limited liability corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business at 901 Cherry Avenue, San Bruno, CA 94066. YouTube LLC is a wholly owned and controlled subsidiary of Google.

## JURISDICTION AND VENUE

4.  This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code as well as the United States Constitution, Article I, Sec. 8 Cl. 8. Jurisdiction as to these claims is conferred on this Court by 28 U.S.C. § 1331 and § 1338(a).

5.  Venue is proper in the Northern District of California under 28 U.S.C. § 1391 and § 1400(b).

6.  This Court has personal jurisdiction over *YouTube*. *YouTube* has conducted and does conduct business within the State of California and within this judicial district.

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

1    7.    *YouTube* --directly or through intermediaries-- makes, distributes, offers for sale

2    or license, sells or licenses, and advertises its products and services in the United States, the

3    State of California, and the Northern District of California.

4    ### INTRADISTRICT ASSIGNMENT

5    8.    This is an Intellectual Property Action to be assigned on a district-wide basis

6    pursuant to Civil Local Rule 3-2(c).

7    ### FACTUAL BACKGROUND

8    9.    Plaintiff applied for United States patent registration on December 15, 2000; the

9    first patent Publication date is "Jun. 20, 2002". On August 07, 2007, United States Patent No.

10   7,254,622 ("*patent '622*" or "*'622 patent*") was duly and legally issued for Plaintiff's computer

11   implemented invention (herein "*CII*") entitled "VIDEO-ON-DEMAND SYSTEM." *Nomura*

12   was legally granted *patent '622* and continues to hold all rights and interests in *patent '622*. A

13   true and correct copy of *patent '622* (including the official "Certificate of Correction") is

14   attached hereto as **EXHIBIT 01**.

15   10.    Filing suit [Dkt. 01] on March 11, 2011- Plaintiff Nomura brought this action

16   against the Defendant to stop *YouTube*'s unauthorized use –of the Computer Implemented

17   Invention ("*CII*") described, claimed, and disclosed therein Plaintiff *Nomura*'s *'622 patent*–

18   without any royalties, license or lawful right. *YouTube*'s willful infringement –as it has been

19   discovered– includes but is not limited to, *YouTube*'s businesses, products/services, processes,

20   systems, methods, and technologies –or significant portions thereof– used directly or indirectly

21   by *YouTube,* its affiliates, third-parties and clients, throughout the State of California, the United

22   States, and most other countries in the world.

23   11.    *YouTube*'s video content, also known as video assets or media objects ("*video*

24   *content*") –that are stored, temporarily or permanently, for download, distribution, sharing or

25   viewing via *YouTube* –its affiliates, third-parties, clients and users/viewers (herein "*co-*

26   *infringers*"), are indeed infringing said *'622 patent*. This also means that any *video content*

27   *YouTube* and its *co-infringers* provide –directly or indirectly– to any other affiliate or third-party

28   for upload, conversion, storage, download, distribution, sharing or viewing (not necessarily in

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

1  that order) via the Internet is thereby also infringing *patent '622*.

2      12.      A multicolored modular schematic diagram ("*Diagram*") drawing from *patent*

3  *'622* has been enhanced to simplify the technical overview of *patent '622*. Said *Diagram* shows

4  the system architectural flow of *video content*. Said enhanced *Diagram* is entitled, "Video-on-

5  demand system", "Distribution Layer Modules". *Diagram* is attached hereto as **EXHIBIT 02**.

6  Said *Diagram* and its meaning are described with detail in *patent '622*. This factual information

7  shows how the Plaintiff's Video-On-Demand ("*VoD*") Remote Accessible Contents Server(s)

8  --shown in *Diagram* as boxes 113 and 114 respectively-- connect(s) to the Internet Service

9  Provider(s) ("*ISP(s)*") --shown in *Diagram* as boxes 115 and 116 respectively-- through the

10  internet to users, viewers, and others --shown in *Diagram* as boxes 125 and 137 respectively.

11  This information identifies the ways and means by which *YouTube*, its affiliates, third-parties,

12  clients, users and/or viewers have been infringing –and still continue to willfully infringe

13  Plaintiff *Nomura*'s *'622 patent*.

14      13.      Plaintiff *Nomura* has included a snapshot of *YouTube*'s website home page

15  (http://www.youtube.com/ as of Oct. 14, 2011), herein shown as **EXHIBIT 03**. This web page –

16  one of thousands, if not millions –  provides evidence of ways and means by which the

17  Defendant is infringing the *'622 patent* by using the core concept(s), technology(ies),

18  process(es), business model(s) and method(s) as described in and protected by Plaintiff's patent.

19  As can be clearly seen, the banner advertisement (displayed in Adobe Flash and/or Shockwave

20  video format) is at the top of the web page (for the movie "The Thing"). As with all video-

21  related content displayed on their home page and thousands (if not millions) more web pages

22  throughout *YouTube*, their affiliates, third-parties and others- this *video content* has been and still

23  is willfully infringing Plaintiff *Nomura*'s *'622 patent*.

24      14.      In **EXHIBIT 03**, please notice the video "**The Avengers (2012) watch the**

25  **Official Teaser Trailer | HD**" is highlighted and its URL (universal resource locator) or 'link' is

26  also displayed "http://www.youtube.com/watch?v=zatgnqdlefs&feature=topvideos_mp and the

27  "zatgnqdlefs" indicates the name, identity, or index of the video media asset (*video content*) of

28

1    interest for download, sharing and/or viewing from *YouTube*'s –or an  affiliate's or third-party's–

2    Remote Accessible Contents Server(s).

3         15.    This single *YouTube* web page –amongst thousands, if not millions, more–

4    provides clear evidence that *YouTube* is with absolute certainty, in fact, using ways and means –

5    all of which are identical or bare remarkable similarity to descriptions, claims and disclosures as

6    set forth in Plaintiff *Nomura*'s *'622 patent*.

7         16.    Defendant's web pages "Terms of Service" (https://www.youtube.com/t/terms)

8    and "YouTube Pay Content Terms of Service" (https://www.youtube.com/t/terms_paycontent),

9    herein attached as **EXHIBIT 04** and **EXHIBIT 05** – respectively , also describe and reinforce

10   ways and means by which *YouTube*'s *video content* services willfully infringe *patent '622*.

11        17.    Wikipedia.com ("*Wikipedia*") currently describes *YouTube* as follows in this

12   excerpt, "YouTube is a video-sharing website, created by three former PayPal employees in

13   February 2005, on which users can upload, view and share videos." *See* snapshot of

14   https://secure.wikimedia.org/wikipedia/en/wiki/Youtube herein attached as **EXHIBIT 06**.

15   Wikipedia and other reliable sources state that *YouTube* was founded around February 2005 and

16   acquired by Google, as a "wholly-owned subsidiary", around November 2006.

17        18.    *Wikipedia*'s description of *YouTube*, as well as that from other credible sources,

18   clearly confirms that *VoD* is of paramount importance to *YouTube*'s business model – including,

19   but not limited to, video rentals and sales as well as advertisements, many of which such

20   advertisements are also video-based  – all of which infringe Plaintiff's patent since Defendant's

21   *video content* is stored, distributed, shared and/or viewed via Remote Accessible Contents

22   Server(s) to clients, users, viewers, and others throughout the United States as well as

23   internationally throughout the world.

24        19.    The *VoD* core concepts, technologies, systems, processes, methods, and business

25   models –claimed and described in patent *'622*– are intricately inextricably paramount to

26   *YouTube*'s –and therefore, Google's– financial and related success as demonstrated in the recently

27   discovered Oct. 28, 2011 article entitled "Google's YouTube Announces Hollywood 'Channel'

28   Programming Deals - Peter Kafka - Media - AllThingsD"

First Amended Complaint for Patent Infringement

Case No. 3:11-CV-01208 SI

1 (http://allthingsd.com/20111028/youtube-and-hollywood-finally-link-up-and-come-clean/), and

2 is herein included as **Exhibit 09**.

3     20.    Respectfully, the Court should also notice that Wikipedia states, "According to

4 data published by market research company comScore, YouTube is the dominant provider of

5 online video in the United States, with a market share of around 43 percent and more than 14

6 billion videos viewed in May 2010" (see

7 http://www.comscore.com/Press_Events/Press_Releases/2010/6/comScore_Releases_May_2010

8 _U.S._Online_Video_Rankings) and "In May 2011, YouTube reported in its company blog that

9 the site was receiving more than three billion views per day." (see

10 http://www.telegraph.co.uk/technology/google/8536634/YouTube-users-uploading-two-days-of-

11 video-every-minute.html) **That's three billion willful *YouTube* infringements – DAILY.**

12     21.    Moreover, *YouTube* knowingly, wantonly and willingly infringes *patent '622* for

13 one very simple reason: **GREED**. As stated in the March 25, 2011 article, "YouTube

14 Dominating Online Video Ad Business; $1.3 Billion Forecast in 2011"

15 (http://www.videonuze.com/blogs/?2011-03-25/YouTube-Dominating-Online-Video-Ad-

16 Business--1-3-Billion-Forecast-in-2011/&id=3007) –a snapshot of which is herein included as

17 **EXHIBIT 07**– various industry analysts forecast *YouTube*'s revenues to exceed $1 Billion (US)

18 in 2011 just from *YouTube*'s video-related advertising alone. Such revenue forecasts do NOT

19 include video and/or video game sales, rentals or any other revenue(s) generated from their non-

20 advertising video-related revenue streams.

21     22.    Additionally, Defendant *YouTube* eagerly entices and boldly bribes its *co-*

22 *infringers –YouTube*'s affiliates, third-parties, clients and viewers– to willfully infringe Plaintiff

23 *Nomura*'s *'622 patent* as well via *YouTube*'s innovative revenue sharing programs and other

24 'rewards'. These material facts are reinforced by the Aug. 25, 2009 article "YouTube Extends

25 Revenue Sharing Program To Anyone With A Viral Video"

26 (http://techcrunch.com/2009/08/25/youtube-extends-revenue-sharing-program-to-anyone-with-a-

27 viral-video/), a snapshot of which is included herein as **EXHIBIT 08**.

28     23.    **USC 35 § 154 (a)(4) Specification and Drawing** states, "copy of the

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

1    specification and drawing shall be annexed to the patent and be a part of such patent." Therefore

2    –as Plaintiff *Nomura* understands the law– the specification(s) and drawing(s) become a legal

3    part of, and thereby reinforce, the claims described within *patent '622*. Furthermore, *patent '622*

4    states, "While the present invention has been described herein with respect to the exemplary

5    embodiments and the best mode for practicing the invention, it will be apparent to one of

6    ordinary skill in the art that many modifications, improvements and subcombinations of the

7    various embodiments, adaptions and variations can be made to the invention without departing

8    from the spirit and scope thereof." *Patent '622* at 10:42-49.

9       24.     Further –to the best of Plaintiff *Nomura*'s knowledge, information, and belief–

10    there is no known "prior art" that could potentially invalidate *patent '622* or render it

11    unenforceable. Likewise, the patent transaction history shows that, even with multiple patent

12    examiners, there is not one rejection or narrowing of claims for *patent '622*. In fact, aside from a

13    couple instances of typographical errors being corrected, *patent '622* –as issued– is, for all

14    intents and purposes, identical to the same patent as provided in the USPTO patent application.

15    This fact is an exceptionally rare occurrence throughout the known history of patents issued to

16    date.

17       25.     Plaintiff *Nomura* hereby asserts that *patent '622* is a **Pioneer Patent** for a whole

18    new field which, as Plaintiff understands the law, affords a much broader range of interpretations

19    under the Doctrine of Equivalents. "The substantial equivalent of a thing is, in the sense of

20    patent law, the same as the thing itself. Two devices which perform the same function in

21    substantially the same way, and accomplish substantially the same result, are therefore the same,

22    though they may differ in name or form." *Machine Company v. Murphy*, 97 U.S. 120 (1877) and

23    as more recently upheld in *Warner-Jenkinson Company v. Hilton-Davis Chemical Co.*, 117 S.Ct.

24    1040 (March 1997).

25       26.     While infringement, either literal or under the doctrine of equivalents, is a

26    question of fact, judgment may nevertheless be granted "when no reasonable jury could find that

27    every limitation recited in the properly construed claim either is or is not found in the accused

28    device." Bai v. L & L Wings, 160 F.3d 1350, 1353 (Fed. Cir. 1998). That is true even where

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

1  there are incidental claim construction issues not yet resolved. Claim construction is a question

2  of law for the Court to decide, and as the Court has recognized, resolution of such issues in

3  connection with a motion on infringement often provides necessary context to fully frame such

4  issues. Rheox, Inc. v. Entact, Inc., 276 F.3d 1319, 1324 (Fed. Cir. 2002).

5        27.    Upon information and belief, Plaintiff *Nomura* hereby asserts that Defendant

6  *Amazon* is infringing one or more claims in *patent '622*, including the very core concepts,

7  processes, systems and methods described therein *VoD patent '622*, by allowing *video content* to

8  be uploaded, converted, stored, downloaded, distributed, shared and/or viewed to or from any

9  Remote Accessible Contents Server(s), "On Demand", through the Internet via an ISP (Internet

10 Service Provider) or ASP (Alternative Service Provider) or related communications methods

11 (herein "*VoD infringements*"). Just as all planes, trains, and automobiles have core engines

12 designed to allow contents to be transferred, stored, delivered, and received via a given route-

13 the Remote Accessible Contents Server(s) in *VoD patent '622* are the same 'core engine' for

14 delivering *video content* throughout the world via the Internet and related communications

15 methods as described in *patent '622*.

16       28.    Plaintiff *Nomura* has, in fact, suffered egregious injuries for which damages

17 should be awarded. As Plaintiff has unfortunately discovered, try negotiating favorable license

18 or viable royalty agreements with intelligent savvy companies who already know your patent has

19 been, and is still being, willfully infringed by major international corporations like *YouTube*.

20 How long do you honestly believe it will take before said savvy companies begin laughing, if

21 they even take a meeting or your call(s) at all?

22       29.    In point of fact, long before any litigation- Mr. *Nomura* went to Google's

23 Mountain View campus in order to personally notify *YouTube* and Google of *patent '622* as well

24 as *YouTube*'s past and present infringement thereof. Google's genius response was to have their

25 security staff swiftly surround and rapidly remove Mr. *Nomura* promptly from their premises.

26 This extremely embarrassing, phenomenally frightful, egregious experience was so distraughtly

27 devastating that it became the genesis and impetus for Mr. *Nomura* to become Plaintiff *Nomura*.

28       30.    Furthermore, Mr. *Nomura*'s personal visit to *YouTube* at Google's campus also

First Amended Complaint for Patent Infringement

Case No. 3:11-CV-01208 SI

1   served as 'notice' of said infringement(s). Plaintiff *Nomura*'s March 11, 2011 *Complaint* and

2   subpoena, therein, serve as secondary 'notice' of said patent infringement. Despite such notices,

3   *YouTube* (and Google) continue their willful infringement of Plaintiff *Nomura*'s *'622 patent-*

4   with reckless abandon.

5                       **A.**     **Patent Infringement Damages.**

6          31.    Moreover, any intent to limit or eliminate Plaintiff *Nomura*'s opportunity(ies) to

7   collect any and all appropriate damages will have significant potential for unjustly eliminating or

8   severely reducing Plaintiff *Nomura*'s important legal rights guaranteed to him and all inventors-

9   by law.

10         32.    As Plaintiff *Nomura* has discovered, lost profits or reasonable royalties are

11  damages available for patent infringement. Interest on the damages can often be as much as the

12  damages. Lost profits assumes that the patent owner is selling the patented item, that he could

13  have met the demand in the lost market, and that the patent owner can determine with reasonable

14  probability how much profit would probably have been made if there was no infringement.

15  Reasonable royalties are available when that amount would be more than lost profits or if lost

16  profits cannot be proved. Enhanced or punitive damages of three times the award are available

17  for willful infringement.

18         33.    Damages for patent infringement are governed by 35 U.S.C. § 284 which

19  provides, "Upon finding for the claimant the court shall award the claimant damages adequate to

20  compensate for the infringement, but in no event less than a reasonable royalty for the use made

21  of the invention by the infringer, together with interest and costs as fixed by the court."

22         34.    The United States Supreme Court interpreted the law as follows, "[T]he present

23  statutory rule is that only 'damages' may be recovered. These have been defined by this Court as

24  'compensation for the pecuniary loss he [the patentee] has suffered from the infringement ....'

25  They have been said to constitute "the difference between his pecuniary condition after the

26  infringement, and what his condition would have been if the infringement had not occurred."

27  Aro Mfg. Co. v. Convertible Top Co., 377 U.S. 476, 507 [141 USPQ 681] (1964) (citations

28  omitted).

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

35.     The *Aro* decision further made clear that infringement damages are not determined by the infringer's profits, but by the loss(es) to the patent owner. "But the present statutory rule is that only 'damages' may be recovered. These have been defined by this Court as 'compensation for the pecuniary loss he [the patentee] has suffered from the infringement, without regard to the question whether the defendant has gained or lost by his unlawful acts." *Aro* at 506 (citations omitted).  However, the District Court's use of an infringer's profit margin for comparison purposes in determining the reasonableness of a patent owner's estimate of lost profits did not constitute an abuse of discretion.  Kori Corp. v. Wilco Marsh Buggies and Draglines, Inc., 761 F.2d 649 (Fed.Cir.1985).

36.     In the relatively famous instant-camera infringement case of Polaroid Corp. v. Eastman Kodak Co., 1481, 1484 [16 USPQ 2d] (1990) the United States District Court for the District of Massachusetts explained that there are two ways to calculate damages.  The first and preferred method is lost profits.  The second is reasonable royalty.  "The general rule for determining the actual damages to a patentee that is itself producing the patented item, is to determine the sales and profits lost to the patentee because of the infringement.  Although the statute states that the damage award shall not be 'less than a reasonable royalty,' 35 U.S.C. § 284, the purpose of this alternative is not to provide a simple accounting method, but to set a floor below which the courts are not authorized to go."

37.     When clear and convincing evidence is presented that an infringing party acted willfully to infringe a patent, the law permits "increased damages up to three times the damage amount found or assessed."  The Court of Appeals for the Federal Circuit has altered the landscape of the law on infringement damages and is generally considered to have made damages more rational and related to the total losses sustained by the patent owner.

38.     A first example is Uniloc USA, Inc. v. Microsoft Corp., decided Jan. 04, 2011 (2010-1035, -1055), wherein the Federal Circuit held that there is no rule of thumb that 25% of the expected profit rate would be an assumed baseline license rate when calculating patent infringement damages. Citing others, the Federal Circuit observed: "([The 25 percent rule] takes no account of the importance of the patent to the profits of the product sold, the potential

First Amended Complaint for Patent Infringement

Case No. 3:11-CV-01208 SI

1  availability of close substitutes or equally non-infringing alternatives, or any of the other

2  idiosyncrasies of the patent at issue that would have affected a real-world negotiation... it fails to

3  'distinguish between monopoly and normal profit..." The Court held: "This court now holds as a

4  matter of Federal Circuit law that the 25 percent rule of thumb is a fundamentally flawed tool for

5  determining a baseline royalty rate in a hypothetical negotiation. Evidence relying on the 25

6  percent rule of thumb is thus inadmissible under Daubert and the Federal Rules of Evidence,

7  because it fails to tie a reasonable royalty base to the facts of the case at issue."

8       39.     A second example is Lucent Techs., Inc. v. Gateway, Inc., 580 F.3d 1301, 1324

9  (Fed. Cir. 2009), wherein the Federal Circuit reiterated that "The second Georgia-Pacific factor

10  is '[t]he rates paid by the licensee for the use of other patents comparable to the patent in suit.'

11  318 F. Supp. at 1120." The Court stated that the claimant must "prove that the licenses relied on

12  were sufficiently comparable" to what would prevail in the hypothetical royalty negotiation in

13  order to be usable for purposes of damages calculation in an infringement damages calculation.

14       40.     A third example is In re Seagate, 497 F. 3d 1360 (Fed. Cir. 2007), where the

15  Federal Circuit held that in order to support an award of special damages (treble damages), one

16  must prove "willful infringement... [with] at least a showing of objective recklessness."

17       41.     In Polaroid Corp. v. Eastman Kodak Co., 16 U.S.P.Q.2d 1481 (D. Mass. 1990),

18  Polaroid argued for a 72.5% reasonable royalty for cameras and a 63.4% reasonable royalty for

19  film, essentially equating its reasonable royalty claims to its claims for lost profits. Kodak

20  countered with a detailed Georgia-Pacific analysis and contended a reasonable royalty would be

21  5%. Far from splitting the difference, the District Court found Kodak's analysis persuasive and

22  awarded Polaroid only 10%, which was far closer to Kodak's number than to Polaroid's. The

23  hundreds of millions of dollars that Polaroid undoubtedly left on the table by overreaching for 60

24  to 70% rather than contending for a 25 or 30% reasonable royalty is a stern lesson that

25  reasonable rather than extreme positions are the key to the success of not only the infringer, but

26  also the patent owner. The Court awarded Polaroid nearly one-billion (approximately $874

27  million US) dollars.

28       42.     Further more, the Federal Circuit in Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538,

1544-49 (Fed Cir. 1995) (en banc), dispelled the notion that patent owners must practice their own patents to be entitled to lost profits. Patent owners that compete with infringers and lose sales because of the infringement can meet the "but for" test even if their own product is not covered by the patent in suit or any patent for that matter.

43.     Therefore, it is Plaintiff *Nomura*'s understanding that *YouTube*'s willful repeated continuing infringement has directly prevented –and is still impeding– licensing and/or royalty agreements with other business(es) that utilize or may wish to utilize any portion(s) of the "Video On Demand" *patent '622* descriptions, claims and/or disclosures within their past, present, or future business operations. This catastrophic loss has been tremendously devastating –financially and otherwise– to Plaintiff *Nomura*.

44.     As Plaintiff *Nomura* understands the law, *YouTube* is liable for **ALL** of Plaintiff *Nomura*'s cumulative losses to-date, as total damages incurred therefrom all such patent infringements throughout the world. *YouTube*'s liability clearly exists –in a causal relationship due to *YouTube*'s, its affiliates', its third-parties' clients' users' and viewers' direct, induced, and/or contributory infringements– since Plaintiff *Nomura* has been unable to obtain any patent licenses or royalty agreements with the hundreds –if not hundreds of thousands– of businesses who utilize or have utilized –in part or in whole or in close similarity to– descriptions, claims and/or disclosures found in *patent '622*.

### B.     Willful Intent or Willful Infringement.

45.     A Plaintiff must allege facts sufficient to demonstrate that *YouTube*'s activities constitute infringement that is willful. At the very least- Plaintiff *Nomura*'s Complaint does serve as notice of infringement for *YouTube*. Since *YouTube* still allows viewing, downloading, distributing and sharing of such *video content*, ALL acts of infringement subsequent to said notice(s) are –as a material fact – "willful". Upon information and belief, *YouTube* had constructive knowledge of Plaintiff *Nomura*'s *VoD '622 patent*, therefore ALL subsequent infringements since that date are also "willful". Further more, should this prove to be an "exceptional case", Plaintiff is entitled to its appropriate attorney fees under 35 U.S.C. § 285.

46.     "Willful intent" also provides Plaintiff with the right to collect up to three-times

First Amended Complaint for Patent Infringement

Case No. 3:11-CV-01208 SI

1 | the actual damages –"treble damages"– assessed in such patent infringement cases. Case law

2 | shows that a Judge can assess such damages and/or attorney fees if the case or conduct

3 | justifiably warrants such, without necessarily any need by the Plaintiff to plead or prove "willful

4 | intent" or "willful infringement" See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 255 (1986).

5 |      47.    The U.S. Federal Circuit recently affirmed an award of attorneys' fees and

6 | sanctions against plaintiff Eon-Net (See Eon-Net LP v. Flagstar Bancorp, No. 2:05-CV-2129, Judgment

7 | (ECF No. 200) (W.D. Wash. Jun. 21, 2010) ("Final Judgment")) in excess of $630,000. In an opinion

8 | written by Judge Lourie and joined by Judges Mayer and O'Malley, the Federal Circuit affirmed

9 | the District Court's finding that the case was exceptional under 35 U.S.C. § 285 in light of

10 | various instances of litigation misconduct and other bad faith behavior. (*Eon-Net LP, v. Flagstar*

11 | *Bancorp*, Case No. 09-1308 (2009)).

12 | **INFRINGEMENT OF U.S. PATENT NO. 7,254,622**

13 |      48.    Paragraphs 1-47 are incorporated herein by reference.

14 |      49.    On August 07, 2007, United States Patent No. 7,254,622 was duly and legally

15 | issued for an invention entitled "VIDEO-ON-DEMAND SYSTEM". *Nomura* was granted

16 | *patent '622* and continues to hold all rights and interests therein. A true and correct copy of

17 | *patent '622* is attached hereto as EXHIBIT 01 (including the official "Certificate of Correction").

18 |      50.    As officially declared in *patent '622*, the patent Filing date is "Dec. 15, 2000"; the

19 | first patent Publication date is "Jun. 20, 2002". The patent Issue date is "Aug. 20, 2007". It is a

20 | documented official material fact that the *'622 patent* Filing and Publication dates occur **PRIOR**

21 | **TO** *YouTube*'s well-documented and publicized launch, including their *VoD* sharing, video-

22 | advertisement, and other related video services as well as any other known deployment of video-

23 | related media assets which exist –within *YouTube*, and/or its *co-infringers*– for upload,

24 | conversion, download, distribution, sharing and/or viewing via the Internet.

25 |      51.    It should also be noted that –despite being available to the public for review or

26 | objection– at NO TIME during the **SEVEN (7) YEAR** patent process, or in the subsequent years

27 | since being issued– have either *YouTube* or Google ever questioned or contested the validity or

28 | enforceability of *patent '622*. Likewise, neither *YouTube* nor Google has made any offers for

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

1  licensing or royalty agreements regarding *patent '622.*

2        52.    Upon information and belief, Defendant *YouTube* has been, and currently is,

3  directly and indirectly willfully infringing one or more claims of *patent '622. YouTube* is liable

4  for such infringement under 35 U.S.C. § 271 by making systems, using methods, licensing

5  websites, hardware, and software designed to upload, convert, store, distribute and share – from

6  Remote Accessible Contents Server(s) – *video content* that is delivered via the Internet to users,

7  viewers, and others by ways and means as already claimed in *patent '622. YouTube*'s entire

8  business model is based upon the ability for *YouTube*, its affiliates, third-parties, clients and/or

9  users/viewers to upload, convert, download, distribute, share and/or view said *video content*

10  (again, not necessarily in that order) via the Internet.

11        53.    Upon information and belief, Defendant *YouTube*'s infringements and *co-*

12  *infringements* of *patent '622* are direct and indirect as well as contributory and induced

13  infringements since *YouTube* directly infringes from its own site(s) and other sites. *YouTube*

14  allows other parties to embed *YouTube*'s *video content* into and serve from their affiliate and/or

15  third-party websites and respective devices as well as from *YouTube*'s websites and devices.

16  *YouTube* also encourages and even rewards *co-infringers* of *patent '622* who upload, convert,

17  download, distribute, share and/or view said *video content.*

18        54.    Upon information and belief, *YouTube* has had actual and constructive knowledge

19  of *patent '622* since at least 2006, and *YouTube*'s infringement of *patent '622* has been willful,

20  and will continue unless enjoined by this court. Pursuant to 35 U.S.C. § 283, Plaintiff *Nomura* is

21  entitled to a the relief described hereinafter to remedy any further infringement.

22  **PRAYER FOR RELIEF**

23      **WHEREFORE**, Plaintiff *Nomura* prays for judgment against Defendant as follows:

24     A) For entry of a judgment declaring that Defendant *YouTube* has directly and/or indirectly

25        infringed, induced and/or contributed –and continues to infringe– one or more claims of

26        United States Patent No. 7,254,622.

27     B) For preliminary and permanent injunctive relief restraining and enjoining Defendant and

28        their respective officers, agents, servants, employees, attorneys, and those acting in

Page -13 of 72-

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI

1    privity with them who receive actual notice of the order by personal service or otherwise,

2    from any further infringement of United States Patent No. 7,254,622 pursuant to 35

3    U.S.C. § 283, or in the alternative, awarding fair and reasonable royalty(ies) for

4    postjudgment infringement;

5    C) For an award of Plaintiff's damages and Defendant's profits attributable to their infringing

6    acts, and/or statutory damages, as applicable, in the maximum amount permitted by law

7    with respect to each infringement of United States Patent No. 7,254,622, said damages to

8    be trebled in accordance with Defendant's continuing willful infringement;

9    D) Directing disgorgement of all profits, direct and/or indirect, illegally gained;

10   E) Finding Defendant liable for all monetary damages and other compensation awarded;

11   F) For an award of pre-judgment and post-judgment interest and costs to Plaintiff in

12   accordance with 35 U.S.C. § 284, in an amount according and respective to proof;

13   G) For an award of Plaintiff's litigation fees, costs, and disbursements in this action pursuant

14   to 35 U.S.C. § 285 or as otherwise permitted by law; and,

15   H) For an award of such other costs and further relief as the Court and/or Jury may deem

16   just and proper.

17                        **JURY DEMAND**

18   Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff *Nomura*

19   respectfully requests a trial by jury on all issues so triable.

22                                    Respectfully submitted,

24                                    Dated this 10th day of January, 2012

26   By: _____

27   Tetsuya Joe Nomura,
     Pro Se Plaintiff

Page -14 of 72-

FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Case No. 3:11-CV-01208 SI